**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ANTHONY TART, on behalf of himself and all others similarly situated, | Case No. 14 CV 8004 (AJN) |
| Plaintiffs, | |
| -against- | |
| LIONS GATE ENTERTAINMENT CORPORATION, LIONS GATE FILMS, INC., and DEBMAR-MERCURY LLC., | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF**
**THE CLASS AND COLLECTIVE ACTION SETTLEMENT**

## TABLE OF CONTENTS

INTRODUCTION…………………………………….………………………...………1

I.     FACTUAL AND PROCEDURAL BACKGROUND……………….…………..…….2

       a.   Nature of Plaintiff's Claims and Lions Gate's Defenses………………………….2

       b.   Settlement Negotiations…………………………………………….….……...2

II.    SUMMARY OF THE SETTLEMENT TERMS……………………………………....3

             A.  The Settlement Fund…….…………………………………….…………3

             B.  Eligible Employees…………………………………………………...3

             C.  Releases……………………………………………………….………..3

             D.  Allocation Formula……………………………………….………......4

             E.  Attorneys' Fees, Litigation Costs, and Service Awards………………….....5

III.   CLASS ACTION SETTLEMENT PROCEDURE………………………….……….5

IV.    THE COURT SHOULD GRANT PLAINTIFFS' REQUEST TO
       PROVISIONALLY CERTIFY THE RULE 23 SETTLEMENT CLASSES……….…..7

             A.  Numerosity ……………………………………….…………………...7

             B.  Commonality and Predominance……………….…….………….………...7

             C.  Typicality………………………………………………………..9

             D.  Fair and Adequate Representation……………………………...………......9

             E.  Superiority…………………………………………………….……......10

V.     THE COURT SHOULD GRANT PLAINTIFFS' REQUEST TO
       CONDITIONALLY CERTIFY THE FLSA COLLECTIVE ……………….……….11

VI.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE…………13

             A.  The Settlement is Fair, Reasonable, and Adequate…………………….….15

B.  Litigation Through Trial Would be Complex, Costly,
and Long (*Grinnell* Factor1)…………………………………………………15

C.  The Reaction of the Class Has Been Positive (*Grinnell* Factor 2)………..…16

D.  Discovery Has Advanced Far Enough to Allow the Parties
to Resolve the Case Responsibly (*Grinnell* Factor 3)………………………..16

E.  Plaintiff Would Face Risks if the Case Proceeded
(*Grinnell* Factors 4 and 5)………………….…………………….…17

F.  Risks Involved in Maintaining the Class Through Trial
(*Grinnell* Factor 6)……………………………………………………………..18

G.  Defendant's Ability to Withstand a Greater Judgment
is Not Determinative (*Grinnell* Factor 7)…………………………………..…18

H.  The Settlement Fund is Substantial, Even in Light of the Best Possible
Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9) ….19

VII.    THE NOTICE PLAN, DISTRIBUTION PROCESS,
AND RELEASE ARE APPRORIATE……………………………………….…..20

VIII.    THE COURT SHOULD SET A DATE FOR A FINAL APPROVAL HEARING……..22

CONCLUSION………………………………………………….……………..…………22

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Arias v. Clear Channel Broadcasting, Inc., 14-CV-05088(SN) (S.D.N.Y. July 10, 2015)……..…9

Bourlas v. Davis Law Assocs
237 F.R.D. 345 (E.D.N.Y. 2006) ……………………..………………………………………13

Cagan v. Anchor Sav. Bank FSB
 No. 88 Civ. 3024, 1990 WL 73423 (E.D.N.Y. May 22, 1990) …………………………...…….19

Caridad v. Metro-North Commuter R.R.
191 F.3d 283 (2d Cir. 1999) ……………………………………………………………………....9

Chavarria v. Crest Hollow Country Club at Woodbury, Inc., Index No. 017464/2011
(Sup. Ct. Nassau Cty. Comm. Div., Dec. 13, 2013)………………..…………………………10

City of Detroit v. Grinnell Corp.
495 F.2d 448 (2d Cir. 1974) ……………………………………………………………………...15

Clark v. Ecolab Inc., 2009 WL 6615729 (S.D.N.Y. Nov. 27, 2009)………………………...13, 14

Consol. Rail Corp. v. Town of Hyde Park
47 F.3d 473 (2d. Cir. 1995)……..………………………………………………………………7

Cruz v. 13th Avenue Fish Market, Inc., 11-CV-1209(SJ)(CLP) (E.D.N.Y. Dec. 27, 2011)…...….7

Damassia v. Duane Reade, Inc.
250 F.R.D. 152 (S.D.N.Y. 2008) ………………………………………………..……..9

deMunecas v. Bold Food, LLC, 2010 U.S. Dist. LEXIS 87644 (S.D.N.Y 2010)……………..……14

Dorn v. Eddington Sec., Inc., 2011 WL 382200 (S.D.N.Y. Jan. 21, 2011)……...………………17

Elliott v. Allstate Investigations, Inc.,
2008 U.S. Dist. LEXIS 21090 (S.D.N.Y. Mar. 19, 2008)……………………………………12

Frank v. Eastman Kodak Co.
228 F.R.D. 174 (W.D.N.Y. 2005) ……………………………………………...............passim

Garcia v. The Executive Club LLC, 10-CV-1545 (SHS) (S.D.N.Y. Aug. 29, 2012)……..……..10

Gautreaux v. Pierce
690 F.2d 616 (7th Cir. 1982)………………………..……………..………....…………..……14

Glatt v. Fox Searchlight Pictures, Inc.
__ F.3d __, 2015 WL 403318 (2d Cir. July 2, 2015) ...…………………………………………17

Gortat v. Capala Bros.
257 F.R.D. 353 (E.D.N.Y. 2009)……………………………………………………………...10

Grant v. Warner Music Group Corp. et al., 13-CV-4449 (PGG) (S.D.N.Y. August 21, 2015)…..9

Hernandez v. Immortal Rise, Inc.
2013 U.S. Dist. LEXIS 56658 (E.D.N.Y 2013) ……………………….……………………...14

In re Austrian & German Bank Holocaust Litig.
80 F. Supp. 2d 164 (S.D.N.Y. 2000) ……………………………….…………….......…...15, 19

In re EVCI Career Colls. Holding Corp. Sec. Litig.,
2007 WL 2230177 (S.D.N.Y. July 27, 2007)…………………….…………………………….14

In re Ira Haupt & Co.
304 F. Supp. 917 (S.D.N.Y. 1969) …………………………………………………………...17

In re Michael Milken & Assocs. Sec. Litig.
150 F.R.D. 57 (S.D.N.Y. 1993) ……………………………………………………………….21

In re Nasdaq Market-Makers Antitrust Litig., 176 F.R.D. 99, 102 (S.D.N.Y. 1997)…………..13

In re Painewebber Ltd. P'ships Litig.
171 F.R.D. 104 (S.D.N.Y. 1997)..……………………………………………………………..17

In re: Penthouse Executive Club Compensation Litigation,
10-CV-1145 (KMW) (S.D.N.Y. Jan. 14, 2014)……………….………………………………..9

In re Prudential Sec. Inc. Ltd. P'ships Litig.
163 F.R.D. 200 (S.D.N.Y. 1995) ……………………………………………………………...14

In re: Sinus Buster Prods. Consumer Litig.,
2014 U.S. Dist. LEXIS 158415 (E.D.N.Y. Nov. 10, 2014) ...…………….…………...………7, 8

In re Traffic Exec. Ass'n
627 F.2d 631 (2d Cir. 1980) ……………………………………………………….……………14

In re Warfarin Sodium Antitrust Litig.
391 F.3d 516 (3d Cir. 2004) …………………………………….…………….…………...13, 16

Joel A. v. Giuliani, 218 F.3d 132 (2d Cir. 2000)…………….…………………………………20

Johnson v. Brennan, 2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011) …………..…….…….…5, 21

Kelen v. World Fin. Network Nat'l Bank ……………………………………………..…….9
2014 U.S. Dist. LEXIS 112079 (S.D.N.Y. July 28, 2014)

Khaimov v. JEM Caterers of Roslyn, LLC,
No. 3215/2012 (Sup. Ct. Nassau Cty., Oct. 16, 2013)……………………………….……..10

Le v. SITA Info. Networking Computing USA, Inc.,
2008 WL 724155 (E.D.N.Y. Mar. 13, 2008)............................................................................11

Lizondro-Garcia v. Kefi LLC
300 F.R.D. 169 (S.D.N.Y. 2014) ..………….……………………………………………8

Lopez v. Bethpage Associates, No. 2012/003465 (Sup. Ct. Nassau Cty. Aug. 22, 2015)...……10

Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350 (11th Cir. 1982)……………..…….12

Martin v. Restaurant Associates Events
53700/2011 (Westchester Cty. Sup. Ct. Oct. 16, 2014)……………………………………10

Maywalt v. Parker & Parsley Petroleum Co.
67 F.3d 1072 (2d Cir. 1995) …………………………………………………………..13

McBeth v. Gabrielli Trucking, 09-CV-4112(LDW) (E.D.N.Y. 2011)………..………………10

Medley v. Am. Cancer Soc., 2010 U.S. Dist. LEXIS 75098 (S.D.N.Y. July 23, 2010)……........12

Meigel v. Flowers of the World, NYC, Inc.,
2012 U.S. Dist. LEXIS 2359 (KBF) (S.D.N.Y. Jan. 9, 2012)……………………….……..12

Mosquera v. Masada Auto Sales, Ltd., 2011 U.S. Dist. LEXIS 7476 (E.D.N.Y. Jan. 25, 2011)..11

Newman v. Stein, 464 F.2d 689 (2d Cir. 1972)………………………………………………19

Officers for Justice v. Civil Serv. Comm'n
688 F.2d 615 (9th Cir. 1982) ………………………………………………………………19

O'Jeda v. Viacom Int'l Inc., 13-CV-05658 (GWG) (S.D.N.Y. May 28, 2015)……….…………9

Palacio v. E*TRADE Fin. Corp.
No. 10 Civ. 4030, 2012 WL 1058409 (S.D.N.Y. Mar. 12, 2012)………………….………14

Reyes v. Altamarea Grp., LLC, 2011 WL 4599773 (S.D.N.Y. June 3, 2011)..…………………14

Ruiz v. Scotto's Smithtown Restaurant Corp.
No. 600317/2010 (Nassau Cty. Sup. Ct. April 2, 2013) …….……….………………………10

Sewell v. Bovis Lend Lease, Inc., 2013 U.S. Dist. LEXIS 47526 (S.D.N.Y. Mar. 29, 2013)……5

Tierney v. Sirius XM Radio, Inc., 14-CV-02926-VEC (S.D.N.Y. Aug. 5, 2015)……..………9

Toledo v. DCJ Catering Corp
600944/2011 (Nassau Cty. Sup. Ct. Dec. 21, 2012)……………………………….………………10

Velez v. Majik Cleaning Serv., Inc., 2007 WL 7232783 (S.D.N.Y. June 25, 2007). ……......…17

Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d 96 (2d Cir. 2005)…………….…………13

Wang v. Hearst Corp.,
__ Fed App'x __, 2015 WL 4033091 (2d Cir. July 2, 2015)……………………………………17

Wolinsky v. Scholastic Inc., 900 F. Supp. 2d 332 (S.D.N.Y. 2012)…………………………11,12

Wynder v. McMahon, 2010 WL 2399328 (E.D.N.Y 2013)……………………………….…12

**Statutes**

Fed. R. Civ. P. 23……………………………………...........................................................*passim*

Fed. R. Civ. P. 54……………………………….......................................................................5

29 U.S.C. § 206..……………………………………………………………………………...2

29 U.S.C. § 216(b)..……………………………………………………………………….…...1

New York Labor Law Article 19 § 650 *et seq*...………………………………………………...2

New York Labor Law Article 6 § 190 *et seq*....………………………………………………...2

12 New York Codes, Rules and Regulations § 142-2.1...………………………………………...2

California Labor Code §§ 221, 223, 1184, 1194.2, 11971……...………………………………...2

Cal. Unlawful and/or Unfair Business Practices (Bus. & Prof. Code) §§ 17200-17208………...2

Cal. Industrial Welfare Commission Wage Orders………..……...………………………………...2

**Secondary Sources**

HERBERT B. NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS,
§§ 11.22, et seq. (4th ed. 2002) ……….…………....................…………….............6,13,14, 15

2 Weinstein-Korn-Miller, *New York Civil Practice*, ¶ 901.19…………………………………..11

*Manual for Complex Litigation* (Third) § 30.41……………………………………………………14

## <u>INTRODUCTION</u>

Subject to this Court's approval, Named Plaintiff Anthony Tart and California Plaintiff Adriana Silva[1] (together, "Plaintiffs"), and Defendant Lions Gate Entertainment Corp., Lions Gate Films, Inc., and Debmar-Mercury LLC[2] ("Defendants" or "Lions Gate" and, collectively with Plaintiffs, the "Parties"), have settled this wage and hour class and collective action. Plaintiffs respectfully submit this unopposed request that the Court enter the agreed-upon proposed order submitted herewith granting preliminary approval of the Joint Stipulation of Settlement and Release (the "Agreement" or "Settlement Agreement"), and approve the documents attached to the Agreement as Exhibits A to F. Further, for settlement purposes only, Plaintiffs ask the Court (which request Defendants do not oppose) to (1) provisionally certify the New York and California settlement classes (the "NY Class" and the "California Class") pursuant to Fed. R. Civ. P. 23, (2) conditionally certify the FLSA Collective pursuant to 29 U.S.C. § 216(b), (3) appoint Tart as class representative of the NY Class, Silva as class representative of the California Class, and Plaintiffs as representatives of the FLSA Collective and the Current FLSA Opt-Ins, and (4) appoint counsel for Plaintiffs ("Plaintiffs' Counsel") as class counsel.

---

[1] Pursuant to the Agreement, and for settlement purposes only, Named Plaintiff and Lions Gate stipulated to the filing of the First Amended Complaint to add Silva as a named plaintiff for purposes of adding class claims under California wage-and-hour law pursuant to Fed. R. Civ. P. 23. *See* Settlement Agreement §§ 2.3(A). The First Amended Complaint was filed concurrently with the instant motion. To the extent that any application to the Court needs to be made to further amend the complaint during the course of Settlement, Defendants shall work cooperatively with Plaintiffs to achieve the filing.

[2] Unless otherwise defined herein, all terms used in the instant motion will have the same meaning as defined in the Agreement.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

   a.  <u>**Nature of Plaintiffs' Claims and Lions Gate's Defenses**</u>

This is an action pursuant to the Fair Labor Standards Act (hereinafter referred to as "FLSA"), 29 U.S.C. §§ 206 and 216(b), New York Labor Law Article 19 § 650, et seq., New York Labor Law Article 6 §§ 190, et seq. ("NYLL"), 12 New York Codes, Rules and Regulations ("NYCRR") § 142-2.1, California Labor Code §§ 221, 223, 1184, 1194.2, 1197, Cal. Unlawful and/or Unfair Business Practices (Bus. & Prof. Code §§ 17200-17208), and Cal. Industrial Welfare Commission ("IWC") Wage Orders, to recover unpaid minimum wages allegedly owed to Plaintiffs and all similarly situated persons who are presently or were formerly employed to work as interns for Lions Gate during the relevant periods.  The gravamen of Plaintiffs' claims is that they and other Lions Gate unpaid Interns were not paid minimum wages for all the hours that they worked.  Lions Gate asserts that its unpaid internship program was completely lawful and fully complied with all applicable wage-and-hour laws.

   b.  <u>**Settlement Negotiations**</u>

The Parties devoted substantial time attempting to settle this action.  To this end, Plaintiffs' Counsel conducted interviews with putative class and collective members, Lions Gate produced data and other information for the proposed class members, and counsel for the Parties engaged in discovery and conducted written depositions and participated in multiple in-person and telephonic settlement conferences.  This includes an in-person mediation with the Honorable Theodore J. Katz (Ret.), which resulted in an agreement in principle.  Negotiations toward a final written agreement continued over the course of several weeks, with the Parties exchanging multiples drafts of the settlement agreement and the exhibits thereto.  The Parties ultimately entered into the Agreement on September 11, 2015.

## II.     SUMMARY OF THE SETTLEMENT TERMS

### A.  The Settlement Fund

Lions Gate has agreed to pay a maximum amount of One Million Three Hundred Forty One Thousand Seven Hundred Fifty Two Dollars ($1,341,752.00) (the "Gross Settlement Amount") to settle the Litigation.  Such payment is subject to the limitations set forth in the Agreement, such as Defendants' right to terminate the Agreement if five (5%) or more Rule 23 Class Members timely submit Opt-Out Statements, if less than 10% of all Class Members become Participating Claimants or if all claims, costs, fees and expenses come in above $800,000  *See* Settlement Agreement § 5.1. The Gross Settlement Amount covers awards to Participating Claimants, Court-approved attorneys' fees and costs, settlement administration fees and costs, and Court-approved service awards.

### B.  Eligible Employees

In addition to Plaintiffs, the Agreement covers the claims of the following groups (collectively, the "Class Members"):

☐ Individuals who were unpaid Interns for Defendant in the United States according to Lions Gate's Records during the Lions Gate internship sessions from [*3 years preceding date of submission of preliminary approval papers*] through the date of the Preliminary Approval Order (the "FLSA Collective" consisting of "FLSA Class Members");

☐ Individuals who were unpaid Interns with Lions Gate in a location in New York according to Lions Gate's Records from October 3, 2008 through August 30, 2014 (the "NY Class" consisting of "NY Class Members"); and

☐ Individuals who were unpaid Interns with Lions Gate in a location in California according to Lions Gate's Records from October 3, 2010 through August 30, 2014 (the "California Class" consisting of "California Class Members").

*See* Settlement Agreement §§ 1.2, 1.15, 1.22.

### C.  Releases

Under the terms of the Agreement, each NY Class Member who does not timely opt-out of the settlement shall release Defendants from all New York wage and hour claims that arose or in

any way related to internships, including but not limited to claims that were, or could have been, brought in the Litigation, and interest, liquidated damages, attorneys' fees, and costs with respect to such claims.  *See* Settlement Agreement §§ 1.32, 1.33, 4.1(A).  Likewise, each California Class Member who does not timely opt-out of the settlement shall release Defendants from all California wage and hour claims that arose or in any way related to internships, including but not limited to claims that were, or could have been, brought in the Litigation, and interest, liquidated damages, attorneys' fees, and costs with respect to such claims.  *See* Settlement Agreement §§ 1.32, 1.33, 4.1(A).

Each Class Member who timely and properly submits a valid Claim Form and IRS Form W-9 ("Participating Claimants") shall release Defendant from all claims under the FLSA and all New York State and California claims (if applicable) that arose or in any way related to the Class Member's internship(s), including but not limited to those claims that were, or could have been, brought in the litigation, and interest, liquidated damages, attorneys' fees, and costs with respect to such claims.  *See* Settlement Agreement §§ 1.31, 1.32, 1.33, 4.1(B).

**D. Allocation Formula**

All Participating Claimants shall be issued a Settlement Check by the Settlement Claims Administrator in accordance with the Agreement and the Final Approval Order.  *See* Settlement Agreement § 2.13.  Each Participating Claimant will receive a settlement payment determined based on whether they were a "Group A" Intern or a "Group B" intern, as reflected in Defendants' records. *See* Settlement Agreement § 3.4.  A "Group A" Intern shall mean an Intern who provided services to The Wendy Williams Show, as reflected in Defendants' records.  A "Group B Intern" shall mean an Intern who is not a 'Group A' Intern, based on Defendants' records.  Participating eligible "Group A" interns will receive a Settlement Check in the gross amount before taxes of Six-Hundred Dollars

($600.00).  Participating eligible "Group B" interns will receive a Settlement Check in the gross amount before taxes of Five Hundred and Thirty-One Dollars ($531.00). *See* Settlement Agreement § 3.4(B).

### E.  Attorneys' Fees, Litigation Costs, and Service Awards

At the Fairness Hearing, Class Counsel will petition the Court for an award of attorneys' fees and costs not to exceed 25.5% of the Gross Settlement Amount, up to a maximum of Three-Hundred-Twenty-Four-Thousand Nine-Hundred-Forty-Two Dollars ($342,942.00).  *See* Settlement Agreement § 3.2.  Pursuant to Fed. R. Civ. P. 23(h) and 54(d)(2), Plaintiffs' Counsel will move for attorneys' fees and costs along with their Motion for Final Approval of the Settlement.  Plaintiffs will also apply for service and/or enhancement awards in the amount of $5,000 to Tart, and $5,000 to Silva in recognition of the services they rendered on behalf of the Class Members. *See* Settlement Agreement § 3.3.[3]  Defendants shall not oppose this application.  *See* Settlement Agreement § 3.3(A).  The Court need not rule on the proposed attorneys' fees award or service awards now. Plaintiffs will file separate motions asking the Court to approve them simultaneously with the Parties' Motion for Judgment and Final Approval of the settlement.  Defendants do not oppose the proposed attorneys' fee award or service award.

## III.   CLASS ACTION SETTLEMENT PROCEDURE

The well-defined class action settlement procedure includes three distinct steps:

1.      Preliminary approval of the proposed settlement;

2.      Dissemination of notice of settlement to class members; and

---

[3] It is Plaintiffs' position that service award applications are common in the Second Circuit, and typically granted.  *See, e.g.*, *Sewell v. Bovis Lend Lease, Inc., et al.*, No. 09-CV-6548, 2013 U.S. Dist. LEXIS 47526, at *14-15 (S.D.N.Y. Mar. 29, 2013) (granting service awards of $15,000 and $10,000 to class representatives in wage and hour class action settlement, and listing supporting cases); *Johnson v. Brennan*, No. 10-CV-4712, 2011 WL 4357376, *21 (S.D.N.Y. Sept. 16, 2011) (granting service awards of $10,000 to class representatives in wage and hour settlement).

3. A final settlement approval hearing at which Rule 23 class members may be heard regarding the settlement, and at which argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*See* Fed. R. Civ. P. 23(e); *see also* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* ("*Newberg*"), §§ 11.22, *et seq.* (4th ed. 2002). The Plaintiffs request that the Court take the first two steps –granting preliminary approval of the Agreement and approving distribution of the proposed Notices to Class Members in accordance with the Agreement.

The Plaintiffs respectfully submit the following proposed schedule for final resolution of this matter for the Court's consideration and approval:

1. Within twenty (20) days of the Court's entry of a Preliminary Approval Order, Defendant shall provide the Settlement Claims Administrator, in electronic form, the following information for all Class Members:  name, Last Known Addresses (as defined in the Agreement to include email address), and internship state(s) as that information exists in Defendant's records ("Class List"). *See* Settlement Agreement § 2.4(A).

2. Within ten (10) days of receipt of the Class List, the Settlement Claims Administrator will mail and/or email to all Class Members, via First Class United States Mail, postage prepaid, and/or electronic mail, the Court-approved Notice applicable to that Class Member, the Claim Form and Release. See Settlement Agreement § 2.4(B).

3. Class Members will have sixty (60) days after the mailing of Notice to return a completed Claim Form or opt out of the settlement; and Rule 23 Class Members will have thirty (30) days after the mailing of Notice to object to the settlement. *See* Settlement Agreement §§ 1.3, 2.5, 2.7. However, if the Settlement Claims Administrator re-mails the Notice to any Class Member because the first mailing bounces or was returned as undeliverable, the Class Member will be allowed to opt-out or object up to thirty (30) days from the date of the second mailing. *See* Settlement Agreement § 2.5(B).

4. A Fairness Hearing for final approval of the settlement shall be scheduled at a date set by the Court after the filing of the Preliminary Approval Motion. *See* Settlement Agreement §§ 1.13, 1.14.

5. No later than fifteen (15) days before the Fairness Hearing, Plaintiffs will file with the Court a Motion for Final Approval. *See* Settlement Agreement § 2.10.

6. After the Fairness Hearing, if the Court grants the Parties' Motion for Judgment and Final Approval, the Court will issue a Final Approval Order (in the form of Exhibit B to the Agreement). If no reconsideration or rehearing is sought of the Court's Final Order and

Judgment, and no appeal is filed, the Final Effective Date shall be thirty (30) days after the Final Order is entered by the Court.  *See* Settlement Agreement §§ 1.11, 1.14.

## IV.    THE COURT SHOULD GRANT PLAINTIFFS' REQUEST TO PROVISIONALLY CERTIFY THE RULE 23 SETTLEMENT CLASSES

Plaintiffs request that the Court provisionally certify classes under New York and California law for settlement purposes. Defendants do not oppose this request for purposes of settlement only. The NY Class consists of individuals who were Interns with Lions Gate in New York State according to Defendants' records, from October 3, 2008 through August 30, 2014.  The California Class consists of individuals who were Interns with Lions Gate according to Defendants' records, from October 3, 2010 through August 30, 2014 (the "California Class" consisting of "California Class Members"). Plaintiffs contend that all requirements of Federal Rule of Civil Procedure 23 are satisfied.  Defendants, for settlement purposes only, do not oppose Plaintiffs' request for Rule 23 class certification.

### A.  *Numerosity*

Defendants have estimated that the classes consists of individuals that were engaged in approximately 1,800 unpaid internships in New York and California combined.  Courts in the Second Circuit have held that "numerosity is presumed at a level of 40 members." *In re: Sinus Buster Prods. Consumer Litig.,* 2014 U.S. Dist. LEXIS 158415 at *9 (E.D.N.Y. Nov. 10, 2014) (*citing Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d. Cir. 1995)). It is clear that the class is so numerous that joinder of all members is impracticable.

### B.  *Commonality and Predominance*

Common questions of law and/or fact predominate over questions affecting only individual members.  These common questions include:

Common Factual Questions:

7

a) Whether Defendants paid Plaintiffs and members of the putative class all earned minimum wages.

b) Whether Defendants required Plaintiffs and members of the putative class to perform work on its behalf and for its benefit.

c) Whether Defendants provided training to Plaintiffs and members of the putative class that was similar to an educational environment.

Common Legal Questions:

a) Whether Defendants misclassified Plaintiffs and members of the putative class as exempt from minimum wages.

Each of these core issues involves the existence of a common nucleus of operative facts based on Defendants' common policies and procedures.

Plaintiffs assert that Defendants had a highly centralized internship program, whereby class members were subject to identical policies and procedures.  Plaintiffs contend that class members routinely performed the most mundane and repetitive tasks that were nonetheless essential to Lions Gate's operations, and thus undeniably reduced the need for additional paid employees and greatly benefitted Lions Gate.  Plaintiffs also allege that interns were not provided any training similar to an educational environment.  Thus, it is Plaintiffs' position that Defendants were the primary beneficiary of every class member's internship. Moreover, as all interns were similarly classified as exempt and not paid minimum wages for all hours worked, it is the Plaintiffs' position that the harm that the Named Plaintiffs allegedly suffered in this case is identical to the harm allegedly suffered by each and every member of the class. Settlement damages are also easily calculated by applying a mechanical formula to the class as a whole.  Because the requirement may be satisfied by a single common issue, it is easily met.  *See In re: Sinus Buster Prods. Consumer Litig.*, 2014 U.S. Dist. LEXIS 158415 at *10 (*citing Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 175 (S.D.N.Y. 2014) ("'[e]ven a single common legal or factual question will suffice'"). The commonality and predominance requirements are thus satisfied.

8

C. *Typicality*

      The Named Plaintiffs' claims are typical of the claims of the members of the putative class. The Named Plaintiffs, like every other member of the class, allege that they were entitled to receive minimum wages for all hours worked.  The Named Plaintiffs, like every member of the putative class, have therefore been injured by Defendants in the same manner. *See Kelen v. World Fin. Network Nat'l Bank*, 2014 U.S. Dist. LEXIS 112079 at * 11 (S.D.N.Y. July 28, 2014); *Damassia v. Duane Reade, Inc.,* 250 F.R.D. 152, 158 (S.D.N.Y. 2008) (*citing Caridad v. Metro-North Commuter R.R.,* 191 F.3d 283, 293 (2d Cir. 1999) ("Typicality 'does not require that the factual background of each named plaintiff's claim be identical to that of all class members; rather, it requires that the disputed issue of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class.'")

D. *Fair and Adequate Representation*

      Plaintiffs and Class Counsel will fairly and adequately represent and safeguard the rights and interests of the class. Counsel are experienced litigators who have successfully represented classes in numerous class actions and have considerable experience in labor law cases.  Numerous courts have preliminary approved class settlements with Virginia & Ambinder, LLP and Leeds Brown Law, P.C. as class counsel.  Examples include the following: *O'Jeda v. Viacom Int'l Inc*., 13-CV-05658 (GWG) (S.D.N.Y. May 28, 2015); *Arias v. Clear Channel Broadcasting, Inc.*, 14-CV-05088(SN) (S.D.N.Y. July 10, 2015), *Tierney v. Sirius XM Radio, Inc.*, 14-CV-02926-VEC (S.D.N.Y. Aug. 5, 2015) and *Grant v. Warner Music Group Corp. et al.*, 13-CV-4449 (PGG) (S.D.N.Y. August 21, 2015).  Courts have also granted final approval of class settlements with Virginia & Ambinder, LLP and Leeds Brown Law, P.C. as class counsel, including but not limited to, *In re: Penthouse Executive Club Compensation Litigation*, 10-CV-1145 (KMW) (S.D.N.Y. Jan.

14, 2014); *Garcia v. The Executive Club LLC*, 10-CV-1545 (SHS) (S.D.N.Y. Aug. 29, 2012); *McBeth v. Gabrielli Trucking*, 09-CV-4112(LDW) (E.D.N.Y. 2011); *Cruz v. 13th Avenue Fish Market, Inc.*, 11-CV-1209(SJ)(CLP) (E.D.N.Y. Dec. 27, 2011); *Martin v. Restaurant Assoc. Events*, 53700/2011 (Westchester Cty. Sup. Ct. Oct. 16, 2014); *Lopez v. Bethpage Associates*, Index No. 2012/003465 (Sup. Ct. Nassau Cty. Aug. 22, 2015) (J. Janowitz); *Chavarria v. Crest Hollow Country Club at Woodbury, Inc.,* Index No. 017464/2011  (Sup. Ct. Nassau Cty. Comm. Div., Dec. 13, 2013); *Khaimov v. JEM Caterers of Roslyn, LLC*, Index No. 3215/2012 (Sup. Ct. Nassau Cty., Oct. 16, 2013) (J. Diamond); *Ruiz v. Scotto's Smithtown Restaurant Corp.*, Index No. 600317/2010 (Sup. Ct. Nassau Cty., June 17, 2013); *Toledo et al. v. DCJ Catering Corp.* Index No. 600994/2011 (Sup. Ct. Nassau Cty., Dec. 13, 2013) among others.

The interests of the class will also be fairly and adequately protected by the Named Plaintiffs. The Named Plaintiffs have a real and direct pecuniary interest in pursuing this action having spent time working for Defendants and having been allegedly underpaid for their work. See *Velez*, 2005 U.S. Dist. LEXIS 709 at *20; *see also Gortat v. Capala Bros.*, 257 F.R.D. 353, 365 (E.D.N.Y. 2009). Additionally, to the best of Class Counsel's knowledge, there is no competing litigation already commenced by any member of the class.

E. *Superiority*

Settlement on a class basis is superior to other available methods for the fair and efficient resolution of this action.  The alternative would be the potential filing of over one thousand individual actions, which is neither an effective means by which to accomplish justice, nor an economical use of the Court's time and resources. Certification of the class would also avoid the possibility of conflicting determinations and the imposition of different and perhaps incompatible standards upon Defendants.  Further, given the expense of litigation and the relatively small size of numerous individual claims, many members of the class simply could not afford to pursue redress

absent class treatment.  Given these facts, a class action is superior to other available methods of settling this controversy. *See* 2 Weinstein-Korn-Miller, *New York Civil Practice*, ¶ 901.19 at 9-97 ("[T]he superiority requirement is most likely to be met in the paradigmatic case for which the class action device was developed: a case in which a large number of claimants each suffer damage in a small individual amount.  In such cases, the class action is not only a superior device, but the only device by which all such claims may be adjudicated.").

Here, class treatment will create uniform resolution of the issues, and achieve judicial economy, convenience and fairness to all parties.  Accordingly, Plaintiffs respectfully request that the Court certify the NY and California Classes pursuant to Rule 23 to effectuate this settlement.

## V.    THE COURT SHOULD GRANT PLAINTIFFS' REQUEST TO CONDITIONALLY CERTIFY THE FLSA COLLECTIVE

Plaintiffs request that the Court conditionally certify, for settlement purposes, the FLSA Collective consisting of all individuals who were unpaid Interns for Lions Gate in any location during the period from [*3 years preceding date of submission of preliminary approval papers*] through the date of the Preliminary Approval Order, along with the Current FLSA Opt-Ins.

FLSA settlements generally require judicial supervision. *See, e.g. Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012); *Mosquera v. Masada Auto Sales, Ltd.*, 09-CV-4925 (NGG), 2011 U.S. Dist. LEXIS 7476, 2011 WL 282327, at *1 (E.D.N.Y. Jan. 25, 2011). The FLSA places "strict limits on an employee's ability to waive claims ... for fear that employers would [otherwise] coerce employees into settlement and waiver." *Wolinsky*, 900 F. Supp. 2d at 335 (*quoting Le v. SITA Info. Networking Computing USA, Inc.*, 07-CV-86 US) (MLO), 2008 WL 724155, at *1 (E.D.N.Y. Mar. 13, 2008)). As such, a court must scrutinize the settlement agreement to determine that the settlement is fair and reasonable. *Id. (citing Elliott v. Allstate Investigations,*

*Inc.*, No. 07 Civ. 6078 (DLC), 2008 U.S. Dist. LEXIS 21090, 2008 WL 728648, at *1-2 (S.D.N.Y. Mar. 19, 2008); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982)). The standard for approval of an FLSA settlement is lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns. *See Wynder v. McMahon*, No. 99 Civ. 772, 2010 WL 2399328, at *6 (E.D.N.Y 2013).

Courts consider a multitude of factors to assess whether an FLSA settlement is fair and reasonable, including: (1) the range of possible recovery; (2) the extent to which "the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses"; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement "is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion. *Wolinsky*, 900 F. Supp. 2d at 335 (*quoting Medley v. Am. Cancer Soc.*, No. 10 Civ. 3214, 2010 U.S. Dist. LEXIS 75098 (S.D.N.Y. July 23, 2010). Based on these factors, Plaintiffs respectfully submit that the proposed FLSA settlement agreement is fair and reasonable.

As discussed in Section IV *supra* and Section VI *infra*, there were significant factual and legal disputes that went to the heart of Plaintiffs' claims. In light of the strength of the claims and evidentiary burdens if this case were to proceed to trial, counsel believes this settlement is extremely fair and reasonable, and compensates claimants with a substantial portion of their alleged unpaid wages. Considering the numerous risks in this case and the uncertainty of further litigation, this settlement is an excellent result for the Plaintiffs, and it should be approved as a fair settlement. *See e.g. Meigel v. Flowers of the World, NYC, Inc.,* 2012 U.S. Dist. LEXIS 2359, at *2-3, 11 Civ. 465 (KBF) (S.D.N.Y. Jan. 9, 2012) ("Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. If the proposed settlement reflects

a reasonable compromise over contested issues, the court should approve the settlement.") (internal citations omitted).  Defendants do not oppose Plaintiffs' request for purposes of settlement only.

## VI.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE

The law favors compromise and settlement of class action suits.  *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context") (internal quotation marks and citation omitted); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged."); *see also Newberg* § 11.41 ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").  The approval of a proposed class action settlement is a matter of discretion. *See Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1995).  "[C]ourts should give proper deference to the private consensual decision of the parties . . . [and] should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation . . . ."  *Clark v. Ecolab Inc.*, 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009) (internal quotation marks and citations omitted).

Under Rule 23, a court's review of a proposed class settlement is a "two-step process."  *In re Nasdaq Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997).  Initially, the court decides whether the settlement should be provisionally approved and, if this is so, "notice is given to the class members of a hearing, at which time class members and the settling parties may be heard with respect to final court approval."  *Id.*  At the provisional approval stage – the present stage in this matter – the court's review is relatively lenient.  *See, e.g., Bourlas v. Davis Law Assocs.*, 237 F.R.D. 345, 355 n.7 (E.D.N.Y. 2006).  The court need only "determine whether the proposed settlement is within the range of possible approval."  *Gautreaux v. Pierce*, 690 F.2d 616, 621 n. 3

(7th Cir. 1982) (internal citations and quotations omitted); *see also In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995) (citation omitted) (noting that the court's first-stage analysis consists of a review for "obvious deficiencies").

Preliminary approval requires only an "initial evaluation" of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties. *Clark*, 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009) (citing *Newberg* § 11.25).   To grant preliminary approval, the court need only find that there is "'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness."   *In re Traffic Exec. Ass'n E. R.Rs.*, 627 F.2d 631, 634 (2d Cir. 1980); *Newberg* § 11.25 (noting that "[i]f the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness . . . and appears to fall within the range of possible approval," the court should permit notice of the settlement to be sent to class members) (quoting *Manual for Complex Litigation* (Third) § 30.41).[4]

"Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement."   *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005).   "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement."   *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007).   Preliminary approval is the first step in the settlement process.   It simply allows notice to issue and for class members to join in the settlement, object or opt out of the settlement.   After the notice period, the Court will be able to

---

[4] Courts often grant preliminary settlement approval without requiring a hearing or a court appearance. *See, e.g.*, *Hernandez v. Immortal Rise, Inc.*, 2012 WL 5862749, at *1 (E.D.N.Y 2013) (granting preliminary approval based on plaintiffs' memorandum of law, attorney declaration, and exhibits); *Palacio v. E*TRADE Fin. Corp.*, No. 10 Civ. 4030, 2012 WL 1058409, at *1 (S.D.N.Y. Mar. 12, 2012) (same); *Reyes v. Altamarea Grp., LLC*, No. 10 Civ. 6451, 2011 WL 4599773 (S.D.N.Y. June 3, 2011) (same); *deMunecas v. Bold Food*, No. 09 Civ. 00440, 2010 U.S. Dist. LEXIS 87644 (S.D.N.Y 2010) (same).

evaluate the settlement with the benefit of class members' input.

### A.   The Settlement Is Fair, Reasonable, and Adequate

In evaluating a class action settlement, courts in the Second Circuit generally consider the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000) ("*Grinnell*").   Although the Court's task on a motion for preliminary approval is merely to perform an "initial evaluation," *Newberg* § 11.25, to determine whether the settlement falls within the range of possible final approval, or "the range of reasonableness," *id.* at § 11.26, it is useful for the Court to consider the criteria on which it will ultimately judge the settlement.

The *Grinnell* factors are (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages;  (6) the risks of maintaining the class action through the trial;  (7) the ability of the defendant to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.  *Grinnell*, 495 F.2d at 463.  All of the *Grinnell* factors weigh in favor of approval of the settlement, and certainly in favor of preliminary approval.

### B.   Litigation Through Trial Would be Complex, Costly, and Long (*Grinnell* Factor 1)

By reaching a favorable settlement prior to dispositive motions or trial, the Parties avoid significant expense and delay.  "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them."  *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001); *see also Frank*, 228 F.R.D. at 184-85 (finding a $75,000

wage-and-hour matter complex, noting that "the costs of continued litigation will be substantial and will quickly outweigh the recovery that could be achieved"). This case is no exception, with approximately 1,800 Class Members and claims under federal and state law.

Further litigation here would cause additional expense and delay. Plaintiffs would likely file a motion to certify the class as a collective action pursuant to 29 U.S.C. § 216(b). Plaintiffs would also likely move to amend the complaint to add Silva as a named plaintiff and would then likely file a motion for class certification under Rule 23. In addition, each party would likely file a cross-motion for summary judgment. If the Court denied the motions, a fact-intensive trial would necessarily follow. A trial would be lengthy and complex and would consume significant time and resources for the Parties and the Court. Any judgment would likely be appealed, further extending the Litigation. The settlement, on the other hand, makes monetary relief available to Class Members in a prompt and efficient manner. Therefore, the first *Grinnell* factor weighs in favor of approval.

## C. The Reaction of the Class Has Been Positive (*Grinnell* Factor 2)

Notice of the settlement and its details has not yet been issued to the class. The Court should more fully analyze this factor after Notice issues and Rule 23 Class Members are given the opportunity to opt out or object. At this early stage in the process, Tart and Silva have expressed approval of the settlement.

## D. Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3)

The Parties have completed enough discovery to recommend settlement. The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004).

The Parties' discovery here meets this standard. Plaintiffs' Counsel conducted an investigation and legal research on the underlying merits of the potential class claims, the likelihood

of obtaining liquidated damages and the proper measure of damages.   They also researched Defendants' likely affirmative defenses.   After filing, Plaintiffs' Counsel conducted further investigations including, but not limited to, interviewing Plaintiffs and certain Class Members, exchanging discovery and written depositions.   The Parties have engaged in extensive and wide-ranging discovery, including on company policies and procedures as well internship duties and tasks.   This factor favors preliminary approval.   *See Dorn v. Eddington Sec., Inc.*, No. 08 Civ. 10271, 2011 WL 382200, at *3 (S.D.N.Y. Jan. 21, 2011) (finding that "Plaintiff's Counsel did substantial work identifying, investigating, prosecuting, and settling Plaintiff's and the class members' claims.").

### E.   Plaintiffs Would Face Risks if the Case Proceeded (*Grinnell* Factors 4 and 5)

Although Plaintiffs' Counsel believe their case is strong, it is subject to considerable risk, particularly in light of the Second Circuit's recent decisions which revised the criteria to assess whether an intern can be unpaid.   *See Glatt v. Fox Searchlight Pictures, Inc.*, __ F.3d __, 2015 WL 403318 (2d Cir. July 2, 2015); *Wang v. Hearst Corp.*, __ Fed App'x __, 2015 WL 4033091 (2d Cir. July 2, 2015).   "Litigation inherently involves risks."   *In re Painewebber Ltd. P'ships Litig.,* 171 F.R.D. 104, 126 (S.D.N.Y. 1997).   Indeed, "[i]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome."   *In re Ira Haupt & Co.,* 304 F. Supp. 917, 934 (S.D.N.Y. 1969); *see also Velez v. Majik Cleaning Serv., Inc.,* No. 03 Civ. 8698, 2007 WL 7232783, at *6 (S.D.N.Y. June 25, 2007).

A trial on the merits would involve significant risks for Plaintiffs.   To the extent a class is certified under Rule 23, the class will be comprised of former interns, a number of whom may not wish to participate in pre-trial discovery and trial of this action.   Moreover, Plaintiffs would have to overcome Lions Gate's defenses, including that Class Members were the primary beneficiaries of

the program, that the internships were closely tied to the Class Members' respective formal education programs, that Class Members did not work nearly as many hours each week as they allege, and that the educational training and academic credit they received justify their treatment as unpaid interns.  While Plaintiffs' Counsel believe that they could ultimately establish both liability and damages, and Lions Gate is equally confident in its defenses, this would require significant factual development.  Plaintiffs' Counsel are experienced and realistic, and understand that the resolution of liability issues, the outcome of the trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration.  The proposed settlement alleviates these uncertainties.  This factor therefore weighs in favor of approval.  *See Frank*, 228 F.R.D. at 187 ("If settlement were disapproved, it is likely that [defendant] would challenge the class certification. While plaintiffs might indeed prevail, the risk that the case might not be certified is not illusory and weighs in favor of the Class Settlement.")

F.   Risks Involved in Maintaining the Class Through Trial (*Grinnell* Factor 6)

Plaintiffs would face risks in asserting their class claims should the Litigation proceed. Should the case proceed, Defendants would oppose Plaintiffs' application for Rule 23 class certification of the New York Labor Law and (if allowed in the case) California Labor Law claims and would oppose Plaintiffs'' application for § 216(b) certification of the Federal Law claims. Moreover, even if Plaintiffs were to succeed under § 216(b) and Rule 23, Defendants would likely seek appeal of the Court's determination. Settlement eliminates the risk and delay inherent in this process.  As such, this factor weighs in favor of approval.

G.   Defendant's Ability to Withstand a Greater Judgment is Not Determinative (*Grinnell* Factor 7)

Defendants' ability to withstand a greater judgment "standing alone, does not suggest that the settlement is unfair."  *Frank*, 228 F.R.D. at 186 (*quoting In re Austrian*, 80 F. Supp. 2d at 178

n.9).   Thus, this factor is neutral and does not preclude the Court from granting preliminary approval.

> H.   The Settlement Fund is Substantial, Even in Light of the Best Possible
>        Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9)

Defendants have agreed to settle this case for a substantial sum.   The amount represents substantial value given the attendant risks of litigation, even though recovery could be greater if Plaintiffs prevailed on a motion to certify the class, succeeded on all claims at trial, and survived an appeal.

The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'"   *Frank*, 228 F.R.D. at 186 (*quoting In re Austrian & German Bank Holocaust Litig.,* 80 F. Supp. 2d 164,178 (S.D.N.Y. 2000)).   "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'"   *Id.* (*quoting Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).   "[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."   *Grinnell Corp.*, 495 F.2d at 455 n.2.   "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair."   *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982) (emphasis added); *see also Cagan v. Anchor Sav. Bank FSB*, No. 88 Civ. 3024, 1990 WL 73423, at *12-13 (E.D.N.Y. May 22, 1990) (approving $2.3 million class settlement over objections that the "best possible recovery would be approximately $121 million").

Here, the settlement provides much more than "a fraction of the potential recovery."   The Gross Settlement Amount equates to either $600 or $531 per Class Member during the covered time

period. If successful at trial, Class Counsel have estimated that the average intern could potentially seek unpaid wages for an average work week of 18 hours for 12 weeks at the regular minimum wage rate of $7.25.  Each Participating Claimant will receive a substantial proportion of the wages they are allegedly owed.  Weighing the benefits of the settlement against the available evidence and the risks associated with proceeding in the litigation, the settlement amount is reasonable.

The *Grinnell* factors weigh in favor of issuing preliminary approval of the settlement. Furthermore, the central terms of this settlement were negotiated and agreed to at a mediation with the assistance of the Honorable Theodore H. Katz (Ret.).  While not determinative, this is an important factor supporting preliminary approval.  In the event that a substantial number of objectors come forward with meritorious objections, the Court can reevaluate its determination.  Because the settlement, on its face, is "'fair, adequate, and reasonable, and not a product of collusion,'" *Frank*, 228 F.R.D. at 184 (quoting *Joel A. v. Giuliani*, 218 F.3d 132, 138-39 (2d Cir. 2000)), the Court should grant preliminary approval.

## VII.   THE NOTICE PLAN, DISTRIBUTION PROCESS, AND RELEASE ARE APPROPRIATE

The proposed Notice, which is attached to the Agreement as Exhibits C, complies with due process and Federal Rule of Civil Procedure 23.  Notice must provide:

the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language:

(i)     the nature of the action;
(ii)    the definition of the class certified;
(iii)   the class claims, issues, or defenses;
(iv)    that a class member may enter an appearance through an attorney if the member so desires;
(v)     that the court will exclude from the class any member who requests exclusion;
(vi)    the time and manner for requesting exclusion; and
(vii)   the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

The proposed Notice satisfies each of these requirements.  The Notice also describes the terms of the settlement, informs the Class Members about the allocation of attorneys' fees, and provides specific information regarding the date, time, and place of the final approval hearing. Courts have approved class notices even when they provided only general information about a settlement.  *See In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 60 (S.D.N.Y. 1993) (class notice "need only describe the terms of the settlement generally"); *see also Johnson v. Brennan,* No. 10 Civ. 4712, 2011 WL 4357376 at *3 (S.D.N.Y. Sept. 16, 2011).  The detailed information in the proposed Notice far exceeds this bare minimum and fully complies with the requirements of Rule 23(c)(2)(B).

The Agreement provides that Notice will be mailed and/or emailed by the Settlement Claims Administrator to each Class Member within thirty (30) days of the entry of the Preliminary Approval Order by the Court.  *See* Settlement Agreement § 2.4(A); § 2.4(B).  The Settlement Claims Administrator will take reasonable steps to obtain the correct addresses of any Class Member whose notice is returned as undeliverable and will attempt re-mailing.  *See* Settlement Agreement § 2.4(C). As discussed above, the Notice informs Rule 23 Class Members about how to opt out from, or object to, the settlement.  Class Members will have until the Claim Form Deadline, or sixty (60) days from the date of mailing, to submit a Claim Form and become a Participating Claimant.  Rule 23 Class Members will have sixty (60) days from mailing of Notice to submit an opt-out request, and Rule 23 Class Members have thirty (30) days to object to the settlement.  *See* Settlement Agreement §§ 2.5, 2.7.  The Settlement Claims Administrator will send Settlement Checks to Participating Claimants within thirty (30) days after the Effective Date.  *See* Settlement Agreement § 2.13(C). Participating Claimants will have one-hundred eighty (180) days from the date of mailing to cash

their Settlement Checks, and any settlement checks not cashed within that period will be void. *See* Settlement Agreement § 2.13(C).

Likewise, the Court should approve the releases of claims in the Agreement. *See* Settlement Agreement §§ 1.31, 1.32, 4.1. These releases were bargained for at arms-length and are part of the compromise vigorously negotiated and consummated in exchange for the Gross Settlement Amount, as detailed in the Agreement. The language of the releases is fair and the releases extinguish claims relating to the Litigation and the claims that are asserted therein or that arise from the facts alleged therein.

## VIII.   THE COURT SHOULD SET A DATE FOR A FINAL APPROVAL HEARING

The proposed Preliminary Approval Order submitted in connection with this motion sets forth a proposed sequence of deadlines associated with the settlement. Plaintiffs respectfully request that the Court enter the proposed Preliminary Approval Order and set a Fairness Hearing at a date practicable.

<u>**CONCLUSION**</u>

For the reasons set forth above, the Plaintiffs respectfully request that the Court grant their Unopposed Motion for Preliminary Approval and enter the attached proposed order.

Dated: New York, New York
      September 11, 2015

Respectfully submitted,


By:   /s/LaDonna M. Lusher
       LaDonna M. Lusher
       Kara S. Miller
       Alison L. Genova
       VIRGINIA & AMBINDER, LLP
       40 Broad Street, 7th Floor
       New York, NY 10004
       Phone: (212) 943-9080
       Fax: (212) 943-9082
       llusher@vandallp.com
       kmiller@vandallp.com

       LEEDS BROWN LAW, P.C.
       Jeffrey K. Brown, Esq.
       One Old Country Road, Suite 347
       Carle Place, New York 11514
       Tel:      (516) 873-9550
       jbrown@leedsbrownlaw.com

       *Attorneys for Plaintiffs*